GEORGE D. DAVIS *vs.* LEONIDAS H. CRESS.

Middlesex.   January 17, 1913. — May 20, 1913.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Practice, Civil,* Exceptions. *Contract,* What constitutes. *Corporation,* Officers and agents. *Evidence,* Extrinsic affecting writings.

A case was heard by a judge without a jury. At the close of the evidence the plaintiff made certain requests for rulings. The judge, after taking the case under advisement, filed a finding for the defendant and a memorandum of findings. The following day the plaintiff's counsel wrote to the judge a letter in which he stated that the plaintiff asked that "his rights be reserved in the matter of exceptions to the requests, findings and rulings refused." The judge acknowledged the receipt of the letter and stated that he would notify the clerk. No notice of the alleging of the exceptions was given to the defendant until he filed a bill of exceptions fifteen days after the judge's findings. *Held,* that the exceptions were alleged and saved properly.

In an action of contract for a commission for the sale of a certain "razor proposition," the declaration was based upon an agreement in a letter signed by the defendant personally. Evidence was introduced at the trial from which the judge properly found that the plaintiff and a corporation of which the defendant was an officer made an oral agreement regarding a commission to be paid to the plaintiff, of which the letter formed a part, and that the plaintiff knew that the defendant was acting for the corporation in the matter. *Held,* that the evidence tending to show such facts was admissible and that on the facts so found the defendant was not liable.

CONTRACT for a commission of £1,000, alleged to have been earned under the provisions of a letter, a copy of which was annexed to the declaration and is given below. Writ dated April 15, 1910.

The letter was as follows: "Waldorf Hotel, Aldwych, W. C. 17/27/1908.  Dear Mr. Davis: — Referring to the conversation we had regarding your compensation for placing the Christy Razor proposition in Great Britain I beg to state that whether you make the sale yourself or I do with your assistance or without your assistance I will pay you ten (10%) per cent of the gross sum we receive but it is understood that this applies only to the tools plant etc. we supply to the proposed English Co and not to any manufactured goods we may supply until the English factory is in operating order.  Faithfully yours, L. H. Cress."

In the Superior Court the case was heard by *Keating*, J., without a jury. At the close of the evidence, the plaintiff asked the judge to rule that the undertaking on which the action was based was the personal undertaking of the defendant, and to make other rulings predicated thereon. The judge refused so to rule and found for the defendant, filing the following memorandum of his findings and rulings:

"In 1907, the R. J. Christy Company was a corporation engaged in the business of manufacturing and selling a safety razor known as the 'Christy Safety Razor,' and had its usual place of business in Fremont, Ohio. The capital stock of the company was one hundred shares, of which one R. J. Christy, who was its president, owned fifty shares and controlled another share which he did not own; and the defendant, who was its treasurer and secretary, owned forty-eight shares and controlled another share which he did not own.

"The plaintiff had been engaged for several years in the business of disposing of inventions, — of American inventions in England, and of English inventions in America.

"In October, 1907, at the request of the defendant, who represented the R. J. Christy Company, the plaintiff went to London and through his efforts one Goodrich of London became interested in the 'Christy Safety Razor proposition'; that is, in the purchase of the company's patent rights to manufacture and sell Christy safety razors in England and other countries than the United States, and in the purchase of tools and machinery from the company to enable the purchaser to manufacture said razors.

"In January, 1908, the defendant went to England and was introduced by the plaintiff to Goodrich. While negotiations were pending between the defendant and Goodrich, the plaintiff and the defendant considered what the plaintiff's compensation should be. The plaintiff said his compensation should be twenty-five per cent. of the selling price of the patent rights, tools and machinery aforesaid, and the defendant said the Christy Company would not pay so much as that. Thereupon it was orally agreed by the plaintiff and the R. J. Christy Company, through the defendant as its agent, that the plaintiff should relinquish the claim he believed he had against the Christy Company for compensation as aforesaid, and in consideration thereof the Christy Company

should pay the plaintiff ten per cent. of the gross sum received by the company from the sale of the patent rights, tools and machinery.

"The letter, a copy of which is annexed to the plaintiff's declaration, is a memorandum of a part of the oral agreement, and the words expressed in said letter 'ten per cent. of the gross sum we receive,' mean ten per cent. of the gross sum the R. J. Christy Company receives.

"Shortly after the oral agreement was made, the R. J. Christy Company, through the defendant as its agent, made a contract in writing with one George Mower of London for the sale of the patent rights, tools and machinery aforesaid. That contract between the Christy Company and Mower was not carried out, the Christy Company having wrongfully refused to recognize it. The defendant had authority to act for the Christy Company in making the written contract with Mower and the oral agreement with the plaintiff. The plaintiff knew that the defendant was acting for the Christy Company in making the oral agreement. The failure to carry out the contract between the Christy Company and Mower was not due to any wrongful act of the defendant; the defendant tried to have the contract carried out."

The finding of the judge was made on June 24, 1912, after he had reserved the case for consideration. On the next day the plaintiff's attorneys wrote to the judge as follows: "Dear Sir: In No. 17872, Middlesex, Davis v. Cress, in which notice of the finding of the court for the defendant was received this morning, the plaintiff would respectfully request that his rights be reserved in the matter of exceptions to the requests, findings and rulings refused."

On June 27, the judge replied as follows: "Gentlemen: Your note of June 25th in relation to the action of Davis v. Cress was received yesterday. I will notify the clerk of the court for the County of Middlesex that the plaintiff has saved exceptions to the refusal to rule as requested by the plaintiff, and to the findings and rulings of the court. In view of my findings and rulings I did not deem it necessary to deal with the defendant's requests."

No notice of either of the foregoing letters was given to the defendant or to his attorneys. On July 9 the plaintiff filed a bill of exceptions, and on July 25 the defendant moved that the bill be

dismissed on the ground that the exceptions "were not claimed within a reasonable time after the court ruled in relation to the plaintiff's requests in said case; and because no notice in relation to the plaintiff's claim of exceptions was filed in court or sent to the defendant until the filing of the plaintiff's bill of exceptions." The judge indorsed upon the bill, "Exceptions allowed so far as I have the right to allow them."

*J. C. Bassett,* for the plaintiff.

*E. C. Jenney,* (*S. Robinson* with him,) for the defendant.

BRALEY, J. The plaintiff's exceptions were duly saved and are properly before us. R. L. c. 173, § 106. St. 1906, c. 342, § 3. St. 1911, c. 212. *Richards* v. *Appley,* 187 Mass. 521. *Graves* v. *Hicks,* 194 Mass. 524.

It is manifest, however, that the action cannot be maintained unless the letter declared on is the personal contract of the defendant. The evidence abundantly showed, and the judge has found, that it constitutes part of an oral contract between the plaintiff and the corporation of which the defendant was treasurer. A contract not required by law to be in writing may be partly oral and partly written, and where the parties have not put the entire agreement in writing, evidence that the portion in writing does not constitute the completed contract, or to show what the contract really was, is always admissible. *Stewart* v. *Thayer,* 170 Mass. 560, 562. *Commonwealth* v. *National Contracting Co.* 201 Mass. 248. *Potter* v. *Hopkins,* 25 Wend. 417. *Marsh* v. *Dodge,* 66 N. Y. 533. *Hussey* v. *Horne-Payne,* 4 App. Cas. 311. The plaintiff testified, that he was ignorant of the defendant's official position, but the finding of the judge upon all the evidence, that, at the inception of the agreement, the plaintiff understood the defendant was acting for the company, is conclusive. *American Malting Co.* v. *Souther Brewing Co.* 194 Mass. 89. If the closing language of the letter received by the plaintiff after he had entered upon his employment, "it is understood that this applies only to the tools plant etc. we supply to the proposed English Co and not to any manufactured goods we may supply until the English factory is in operating order," is read in connection with the finding, it is apparent, that the defendant was not engaged individually in manufacturing safety razors of the brand which were to be placed upon a foreign market through the efforts of the plain-

tiff. It also is to be presumed under the finding, that he must have known the goods to be furnished until the anticipated sale of the foreign patent had been accomplished, were to be supplied by the company. The parties evidently never reduced their entire agreement to writing, and while it cannot be varied, the actual contract may be ascertained from all the circumstances. *DeFriest* v. *Bradley*, 192 Mass. 346. The letter, therefore, cannot be disconnected and treated as an independent undertaking, and the promise of compensation if the plaintiff succeeded in negotiating a sale, is the promise of the principal with whom the plaintiff knowingly dealt. The conclusion of the judge that the defendant never became personally obligated having been warranted, the requests in so far as they were not given, are immaterial. *Goodenough* v. *Thayer*, 132 Mass. 152. *Steamship Bulgarian Co.* v. *Merchants' Despatch Transportation Co.* 135 Mass. 421.

To avoid any misconception we add, that although the alleged contract was made abroad, no proof of the foreign law having been introduced, the decision is in accordance with the provisions of our own law. *Callender, McAuslan & Troup Co.* v. *Flint*, 187 Mass. 104.

*Exceptions overruled.*